**Delbert BAUGHMAN and Linda Baughman, Plaintiffs,**

v.

**Charles E. BOLINGER, M. D., Defendant.**

No. C–2–78–917.

United States District Court, S. D. Ohio, E. D.

March 7, 1980.

---

Walter J. Wolske, Jr., Dennis M. McCarthy, Columbus, Ohio, for plaintiffs.

David Clayman, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This diversity action arises out of medical treatment—an appendectomy—performed by defendant Charles Bolinger on the plaintiff Delbert Baughman in 1964. There are two plaintiffs in this case. The suit of plaintiff Delbert Baughman is one for medical malpractice. Delbert claims that during the 1964 surgery defendant negligently left a surgical drain in plaintiff's body. Delbert further claims that this drain was not discovered until 1977 at which time it had to be removed surgically, causing him pain and suffering. Plaintiff Linda Baughman claims she has suffered loss of consortium, society, companionship and services as a result of the second surgery on her husband.

In the matter presently before the Court, defendant moves to dismiss the claim of Linda Baughman on the ground that it violates the applicable statute of limitations. Upon consideration, and for the reasons stated below, the motion will be denied.

■ This being a diversity action, the Court must apply the state statute of limitations. *Moore v. Illinois Central Railroad Co.*, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). The parties agree that the Ohio statute relevant to the present case is R.C. 2305.09, which states in pertinent part as follows:

> An action for any of the following causes shall be brought within four years after the cause thereof accrued:
>
> . . . . .
>
> (D) For an injury to the rights of the plaintiff not arising on contract or enumerated in [unrelated sections] of the Revised Code.

The issue raised by defendant's motion is simply stated—when does the statute of limitations begin to run against a claim for loss of consortium deriving from a spouse's medical malpractice action—but it is not so simply decided. It is, in fact, apparently, a matter of first impression in this state.

Thus it is for this Court to anticipate the position of the Ohio courts in reaching its decision here.

 The law on certain related matters is relatively clear in Ohio. For instance, it is well established that a loss of consortium claim deriving from a claim of the spouse for medical malpractice is not itself a claim for malpractice, and therefore is not governed by the one-year statute of limitations, R.C. 2305.11, on such actions. *Corpman v. Boyer*, 171 Ohio St. 233, 169 N.E.2d 14 (1960). Further, Ohio recognizes two rules which in certain cases postpone the commencement of the running of the one-year malpractice statute of limitations. Under the so-called "termination rule", a cause of action for medical malpractice will not accrue until, at the latest, the physician-patient relationship finally terminates. *Wyler v. Tripi*, 25 Ohio St.2d 164, 267 N.E.2d 419 (1971). Further, in *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 290 N.E.2d 916 (1972), the Supreme Court of Ohio adopted the so-called "discovery exception". This exception tolls the running of the statute of limitations, in a case involving a foreign object left within a patient's body, until the plaintiff discovers or should reasonably have discovered the negligent act. Finally, in *Amer v. Akron City Hospital*, 47 Ohio St.2d 85, 351 N.E.2d 479 (1976), the court declined to apply the termination rule to toll the running of the statute of limitations governing loss of consortium claims, R.C. 2305.09. *Amer* was not a case involving a foreign object, and the court specifically declined to consider the application of the discovery exception to R.C. 2305.09. 47 Ohio St.2d at 87, n.2, 351 N.E.2d 479.

In the present case, plaintiff states that she does not seek application of either the termination rule or the discovery exception for purposes of tolling the statute of limitations. Rather, plaintiff claims that her rights were not injured, and concomitantly, that the statute did not begin to run, until her husband underwent the 1977 surgery. Defendant, on the other hand, argues that the statute began to run in this case at the time of the appendectomy performed on Linda Baughman's husband in July 1964. Defendant's only offer of support for this position, however, is *Amer v. Akron City Hospital, supra.* In this Court's opinion, however, *Amer* is an insufficient foundation for the proposition which defendant attempts to erect upon it. In that case the plaintiff husband sued for loss of consortium arising out of the alleged negligent administration of X-ray therapy to his wife. This treatment ended in 1963. Plaintiff's wife developed a condition known as radiation necrosis, which manifested itself in 1972. The plaintiff filed his lawsuit in 1974. In deciding the matter, the Supreme Court of Ohio limited itself to the "narrow issue", 47 Ohio St.2d at 86, 351 N.E.2d 479, whether the statute of limitations governing the husband's cause of action for loss of consortium must be tolled until the termination of the physician-patient relationship. In other words, plaintiff asked the court to apply the termination rule of *Wyler v. Tripi, supra*, a malpractice case, to his case for loss of consortium. In declining to thus expand the application of the termination rule, the court stated its holding in the syllabus as follows:

> An action by a husband for loss of consortium, loss of services, and medical expenses, arising from an alleged medical malpractice upon his wife, is governed by the time limitation set forth in R.C. 2305.-09(D) and must be commenced within the period prescribed thereby, which period is not tolled until termination of the physician-patient relationship.

The court found no warrant for expansion of the termination rule in legislation or in the legal theory upon which the termination rule itself is based. 47 Ohio St.2d at 91, 351 N.E.2d at 483–84.

This Court finds that the claim advanced by plaintiff Linda Baughman in the present case is not inconsistent with the holding of the Supreme Court of Ohio in *Amer* or the other Ohio cases above-cited. Plaintiff concedes that her claim is governed by the four-year time limitation of R.C. 2305.09(D). Plaintiff simply argues that the infringe-

ment of her rights giving rise to her cause of action herein did not accrue until 1977, well within the statute. After consideration of the nature of her claim, the Court agrees.

As previously noted, R.C. 2305.09(D) speaks of a cause of action arising from "an injury to the rights of the plaintiff . ." Therefore, the Court must determine what rights of the plaintiff are alleged to have been injured, and when that alleged injury took place. In Ohio, consortium is defined as "the conjugal fellowship of husband and wife, and the right of each to the company, cooperation and aid of the other in every conjugal relation." *Flandermeyer v. Cooper*, 85 Ohio St. 327, 340, 98 N.E. 102, 105 (1912). The court has also stated:

> The "gist" of the wife's action for loss of the consortium of her husband against a defendant who either intentionally or negligently causes injury to her husband is the *direct hurt* which she has suffered by reason of the loss of her husband's society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace. (Emphasis added.)

*Clouston v. Remlinger Oldsmobile Cadillac, Inc.*, 22 Ohio St.2d 65, 72, 258 N.E.2d 230, 234 (1970). In the present case it is eminently clear that plaintiff Linda Baughman did not suffer the "direct hurt" of the loss of her husband's consortium until after he was incapacitated by the surgeon's scalpel in 1977. Up until that time plaintiff enjoyed the consortium of her husband; after that time she alleges this consortium was lost to her. To hold that the statute of limitations governing her right to sue for loss of consortium was running during years in which she fully enjoyed that consortium would be to exalt fiction and avoid undeniable reality.

The Court is aware that in certain situations a statute of limitations commences to run as soon as an allegedly negligent act is committed even though actual injury does not immediately appear. *See, e. g.*, 34 Ohio Jur.2d, *Limitation of Actions*, § 58 (1958); *Wyler v. Tripi, supra*, 25 Ohio St.2d at 166,

267 N.E.2d at 420. Thus, it often occurs that a patient will be barred by the statute of limitations from bringing a malpractice claim even though he could not reasonably have known of the malpractice until sometime after the statute had run. *E. g., Wyler, supra*. Despite hardships often worked by such cases, the rule is upheld as a reasonable limitation upon the danger of stale or fraudulent malpractice claims. *See, Melnyk v. Cleveland Clinic, supra; Wyler, supra*.

In this regard the Court can conceive of situations in which a claim for loss of consortium by a plaintiff's spouse could be used to circumvent the limitation period for malpractice actions enacted by the legislature. For instance, assume that the plaintiff husband in *Amer v. Akron City Hospital, supra*, had presented the argument that he did not suffer loss of consortium until the time the radiation necrosis manifested itself in his wife in 1972, nine years after her last X-ray treatment but only two years prior to the filing of his suit. In the Court's opinion such an argument, parallel to plaintiff's herein, would not have led the Supreme Court of Ohio to a different result.

The Supreme Court of Ohio *has* recognized that "foreign-object cases have, with increasing frequency, been distinguished from the fact patterns of other malpractice cases." *Melnyk v. Cleveland Clinic, supra*, 32 Ohio St.2d at 200, n.5, 290 N.E.2d at 917, n.5. As the court there noted, the "foreign object distinction" and the discovery exception deriving therefrom, are based both on the absence in such cases of the "vexatious inequities" often visited upon a party forced to defend potentially stale or fraudulent medical claims, and on the sound public policy deriving from the absolute dependence of a patient upon his physician during surgery.

In the Court's opinion, in the case of the spouse, as in the case of the patient himself, the exception recognized in foreign object cases would permit recovery for injury to the rights of a spouse under circumstances strongly indicating both that negligence has occurred; *see, Melnyk*, 32 Ohio St.2d at 200,

290 N.E.2d at 917, and that litigation of such a claim would not be unfair to the defendant.

Because the Supreme Court of Ohio has recognized the foreign object case as a legitimate point of departure from the general rule governing the commencement of the malpractice statute of limitations, and because this Court finds the Ohio court's reasoning in such cases to be applicable to the situation presented in this case, it will adopt it here.

The Court recognizes the concerns underlying Ohio decisions such as *Amer* and *Wyler* and does not intend to thwart them here. Given the facts as alleged in *this* case, however, the Court is simply not persuaded that such concerns should control. Thus, the Court holds that under these facts plaintiff Linda Baughman's cause of action accrued for purposes of R.C. 2305.09(D) at the time her spouse discovered or reasonably should have discovered the alleged foreign object left within his body.

Accordingly, for the reasons stated above, defendant's motion to dismiss must be and hereby is DENIED.

So ORDERED.