**BEECHLER, Appellant,**

v.

**TOUCHE ROSS & COMPANY, Appellee, et al.**

[Cite as *Beechler v. Touche Ross & Co.* (1992), 81 Ohio App.3d 354.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60857.

Decided June 15, 1992.

*Roth & Rolf Co., L.P.A.,* and *Sheila P. Cooley,* for appellant.

*Thompson, Hine, & Flory, Daniel W. Hammer, David J. Hooker, R. Benton Gray* and *Gary M. Glass,* for appellee.

---

ANN MCMANAMON, Judge.

This appeal challenges a trial court ruling that a claim by a bank director/shareholder against an accounting firm was time-barred. A review of the record, statutes and case law mandates our affirmance of summary judgment for the accounting firm.

The matter stems from the embezzlement of monies from American National Bank ("ANB") by Jack Nemecek, its former president and chief executive officer. On August 31, 1981, H.W. Beechler bought 4,630 shares of ANB stock for $101,860. Before his purchase, Beechler reviewed ANB financial statements for 1979 and 1980 audited by Touche Ross & Company ("Touche Ross") and issued on January 15, 1981. Shortly thereafter, he joined the ANB Board of Directors.

Touche Ross, a national accounting firm, conducted audits of ANB's financial operations for the years ending December 31, 1980 through December 31, 1984.

In March or April 1982, Beechler reviewed a report prepared by the United States Office of Comptroller of the Currency ("Comptroller") concerning a 1981 examination of ANB. Beechler discovered from that report that "[t]he Bank was, for all intents and purposes, insolvent when [he] bought [the] stock."

In May 1986, during another examination by the Comptroller, serious discrepancies in ANB's real estate mortgage portfolio came to light. Specifically, the Comptroller found that, beginning in 1981, ANB carried several fictitious mortgages originating from its March Mortgage Package, the sums of which were diverted to Nemecek and others. The public disclosure of these forged and/or fraudulent mortgages rendered Beechler's shares in ANB virtually worthless.

Beechler filed the present action on August 6, 1987, naming Touche Ross and Nemecek as defendants. The complaint alleged two counts of negligence against Touche Ross and one count of fraud against Nemecek.

Count One of the complaint stated that during 1980 and 1984:

" * * * Touche Ross was negligent in the manner in which it performed its auditing services and created the false, fraudulent and misleading financial statements during those years due to its failure to discover the foregoing

irregularities, falsifications and defalcations with respect to the treatment of the accounting for the March Mortgage Package."

Count Two further alleged:

"Throughout the audit years of 1980 through 1984, Nemecek followed ongoing practices of creating and/or arranging for the creation of fraudulent and/or forged mortgage loans secured by mortgages, the unauthorized selling of such mortgage loans, and the prefunding of such mortgage loans: These false and fraudulent practices remained undetected through the course of the certified audits performed by Touche Ross.

"In the course and scope of its audit engagements, Touche Ross was grossly negligent in failing to formulate an audit program designed to detect and/or test for such false and fraudulent practices.

"In performing its audit program, Touche Ross was grossly negligent in failing to discover such false and fraudulent practices through proper performance of the audit procedures of its established audit program.

"Further, Touche Ross was grossly negligent in failing to disclose the existence of probable defalcations and lack of proper internal control in the appropriate audited financial statements of ANB.

"Touche Ross failed to discover the foregoing irregularities, falsifications and defalcations with respect to the treatment of an accounting for said mortgage loans, and further, negligently failed to recommend means by which such loss and damage to ANB could be avoided."

On March 4, 1988, Touche Ross filed a motion to dismiss, or in the alternative, for summary judgment, arguing Beechler lacked standing to bring a cause of action and that his complaint was time-barred. Full briefing followed. One month later, the court granted Beechler a default judgment against Nemecek in the amount of $101,860.

On November 10, 1988, on Touche Ross's motion, the trial court consolidated this action with five other pending cases brought against the accountants and arising out of the same circumstances.

Over two years later, on October 16, 1990, the trial court granted the accountants' motion for summary judgment as to Beechler's claims and this appeal followed.

We note that Beechler's notice of appeal was not from a final appealable order when filed because the five pending consolidated cases were then unresolved. The docket now reflects, however, that all other claims were disposed of on or before February 14, 1992, thereby rendering the disputed ruling in this case final and appealable pursuant to Civ.R. 54(B). See *Bender*

*v. Diemert* (Mar. 21, 1991), Cuyahoga App. No. 58304, unreported, 1991 WL 39680.

In his sole assignment of error, appellant Beechler asserts the court erred in holding the action to be barred by the statute of limitations. He raises three arguments to support his position. First, he claims the court failed to recognize and apply the "termination rule" to claims against accountants pursuant to R.C. 2305.09(D). Second, he posits that, even if the termination rule is inapplicable, the statute of limitations does not begin to run until all the elements for negligence have been satisfied. Finally, he argues that, since the cause of action continued over the course of several years, it accrued as the accountants conducted each annual audit.

In granting summary judgment for the accountants, the court relied on *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206. In *Investors*, the court held:

"Claims of accountant negligence are governed by the four-year statute of limitations for general negligence claims found in R.C. 2305.09(D), not by the two-year period for bodily injury or injury to personal property set forth in R.C. 2305.10, or by the one-year limitations period for professional malpractice claims in R.C. 2305.11(A)." *Id.* at paragraph one of syllabus.

The court further held:

"The discovery rule is not available to claims of professional negligence brought against accountants." *Id.* at paragraph two of syllabus.

R.C. 2305.09 provides in part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

" * * *

"(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."

◼ Beechler does not dispute the applicability of *Investors*, but argues that the "termination rule" is applicable to negligence claims against accountants, and thus a four-year time bar exists.

The termination rule developed in the context of medical malpractice claims. It provides that a cause of action does not accrue until the termination of the medical relationship between the physician and the patient. See *DeLong v. Campbell* (1952), 157 Ohio St. 22, 47 O.O. 27, 104 N.E.2d 177; *Wyler v. Tripi* (1971), 25 Ohio St.2d 164, 54 O.O.2d 283, 267 N.E.2d 419.

The termination rule also is applicable to causes of action for legal malpractice. *Omni–Food & Fashion, Inc. v. Smith* (1989), 38 Ohio St.3d 385, 528 N.E.2d 941. See, also, *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398.

On appeal, Beechler argues, "[t]he cases dealing with the negligence of doctors and attorneys reveal a conscious decision on the part of Ohio courts to make the termination rule available to plaintiffs whose claims arise out of the negligence of professionals in whose abilities they have placed their trust." He cites no case law, however, nor are we aware of any, which extends the termination rule to claims of accountant negligence.

Those cases which have considered the statute of limitations for accountant negligence have universally declined to apply the termination rule. In *Richard v. Staehle* (1980), 70 Ohio App.2d 93, 24 O.O.3d 121, 434 N.E.2d 1379, the court implicitly rejected such a rule as it related to a claim for accountant negligence and instead observed, "[a] cause of action for negligence accrues when the negligent act is committed." *Id.* at 97, 24 O.O.3d at 123, 434 N.E.2d at 1383, citing *Kerns v. Schoonmaker* (1831), 4 Ohio 331; *Minister Loan & Savings Co. v. Laufersweiler* (1940), 67 Ohio App. 375, 21 O.O. 326, 36 N.E.2d 895. The *Richard* court concluded:

"Thus, the cause of action under R.C. 2305.09 accrued at the time the allegedly negligent advice was given, i.e., in December of 1975; hence, we hold that this action was timely commenced against the appellant in his capacity as an accountant." *Id.*, 70 Ohio App.2d at 97, 24 O.O.3d at 124, 434 N.E.2d at 1383–1384.

In *Lee Turzillo Contracting Co. v. Touche Ross & Co.* (Oct. 9, 1986), Cuyahoga App. Nos. 51075 and 51114, unreported, 1986 WL 155040, this court cited *Richard v. Staehle, supra,* with approval and held that the statute of limitations for accountant negligence "accrued when the alleged negligent conduct was committed * * *." *Id.* at 19. In that case, the alleged negligent act, coincidentally, was Touche Ross's failure to uncover certain defalcations by an employee of the plaintiff contracting company in separate financial audits conducted for it by Touche Ross from 1977 through 1982. The court found that the cause of action accrued " * * * in 1977 and in each succeeding year when the audit failed to uncover the defalcations." *Lee Turzillo Contracting Co., supra,* at 19. See, also, *Holsman Elec. Sign Co. v. Kohn* (1986), 34 Ohio App.3d 53, 516 N.E.2d 1284 ("A cause of action based on an accountant's negligence accrues at the time of the negligent conduct."). *Id.* at paragraph two of syllabus, citing with approval *Richard v. Staehle* and *Lee Turzillo Contracting Co. v. Touche Ross & Co., supra.*

We reject Beechler's contention that the court in *Investors* appeared to adopt the termination rule. Beechler cites the following language from *Investors*, arguing that the court implicitly found the statute of limitations began to toll only after the accountant-client relationship terminated:

"In the case now before us, IRO and IRT asserted in their complaints that C & L had served as accountants for IRO and IRT through at least part of 1975. The accountants prepared annual audits for the years 1969 through 1974, which were turned over to the trusts on completion. It was not until April 23, 1980, more than four years later, that complaints were filed against the defendants on behalf of the trusts.

"For reasons set forth above, we find that the trusts' causes of action commenced no later than 1975." *Id.*, 46 Ohio St.3d at 182, 546 N.E.2d at 211.

Beechler failed to cite, however, the following dispositive language in *Investors:*

"The four-year statute of limitations governing such claims in accountant negligence commenced to run when the allegedly negligent act was committed or, in this case, no later than 1975." *Id.* at 182, 546 N.E.2d at 212.

The *Investors* court never squarely addressed the applicability of the termination rule to actions under R.C. 2305.09(D). Nevertheless, the use of the disjunctive "or" in the above-cited language indicates the statute of limitations began to toll as early as 1969, when the negligent act was committed, or in 1975, when the accountants' services were terminated. Without further delineation by the court, we cannot find the Supreme Court expressly or implicitly adopted the termination rule with respect to claims for accountant negligence. We thus conclude that the trial court did not err in its interpretation of R.C. 2305.09(D) by rejecting the termination rule.

■ Alternatively, Beechler argues that, even if the termination rule is inapplicable, the statute of limitations did not begin to run until Beechler was damaged by the accountants' negligence. Beechler urges this did not occur until the fraud was discovered in 1986 in a report prepared by the government.

Under R.C. 2305.09, "an action will accrue and commence the running of the statute of limitations when the wrongful act is committed, unless the wrongful act does not give rise to injury immediately." *Cleveland City School Dist. Bd. of Edn. v. Dela Motte–Larson, Nassau & Assoc.* (Dec. 21, 1989), Cuyahoga App. No. 56275, at 7, 1989 WL 155155. See, also, *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 87, 4 OBR 335, 337–338, 447 N.E.2d 727, 729–730; *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 379, 23 O.O.3d 346, 348, 433 N.E.2d 147, 150.

A review of Beechler's November 2, 1987 deposition shows he was aware of Touche Ross's negligence as early as March or April 1982. Beechler stated that, in that time frame, he reviewed a report from the Comptroller regarding its 1981 examination of ANB. Based on that report, he learned, "[t]he bank was for all intents and purposes insolvent when I bought my stock." After acquiring this information in 1982, Beechler added, " * * * I felt that I made an investment and I had an obligation now to see if we [the bank and Beechler] could work it out and I did."

We note that, before purchasing his shares in August 1981, Beechler reviewed Touche Ross's 1979 and 1980 audits, which gave no indication of insolvency, impending or otherwise. At minimum, Beechler was put on notice in 1982 that the 1979 and 1980 audits conducted by the accountants did not match the dismal report presented by the government.

We conclude that Beechler's cause of action against Touche Ross accrued in March or April 1982. By that time, all of the elements for negligence were satisfied. The accountants' negligent conduct occurred on January 15, 1981, the date they released the 1979 and 1980 audits, which failed to detect the bank's solvency problems. The damage or injury to Beechler, however, did not occur until 1982 after he reviewed the government report and recognized the bank's financial problems. Cf. *Cleveland City School Dist., supra,* at 7.

■ Finally, Beechler contends that, since defendant's negligence stemmed from a continuous course of conduct from 1981 through 1985, a new cause of action accrued after each successive annual audit. Thus, though those audits performed before August 6, 1983 were untimely under the four-year statute of limitations, those conducted afterwards gave rise to new causes of action and were timely.

Beechler cites *Lee Turzillo Contracting Co., supra,* to support his position. In that case, this court found the accountants' alleged negligence occurred at annual intervals, each year an audit was performed. Beechler's reliance on *Turzillo* is misplaced. Beechler was aware of defendant's negligence as of 1982. In *Turzillo,* the plaintiff contractor had no knowledge of its accountants' negligence when they performed audits during the course of their professional relationship from 1977 and 1982. Since Beechler was aware of the accountants' negligence in 1982, we are unwilling to reward him for sleeping on his rights by finding that his cause of action occurred after each annual audit.

We conclude the trial court properly granted judgment to the accountants, since Beechler's complaint was untimely under the four-year statute of limitations provided in R.C. 2305.09.

The assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

MATIA, C.J., and F.E. SWEENEY, J., concur.