COOK, APPELLANT, YAGER, APPELLEE.

2.

(No. 405—Decided January 10, 1968.)

*Mr. C. D. Fess,* for appellant.
*Mr. Paul A. Flynn,* for appellee.

GUERNSEY, P. J. As here pertinent, plaintiff's petition, which was filed on May 23, 1966, alleged that on December 11, 1964, he consulted defendant dentist with respect to his dental problem; that defendant informed plaintiff that treatment would require the fitting of a partial denture which would necessitate the extraction of several teeth; that plaintiff acquiesced in defendant's proposed course of treatment and defendant thereupon subjected plaintiff to an oral surgical procedure "in initiating his planned regimen of treatment of plaintiff's condition"; that defendant was guilty of culpable negligence in performing oral surgery on plaintiff not only on December 11,

1964, but also on February 5, 1965, "without taking, prior to performing said oral surgical procedures, any history of plaintiff's past or current condition of health, nor make any inquiry whatsoever thereunto of his patient, plaintiff herein, or of his patient's physician"; that this omission "was the direct and proximate cause of plaintiff sustaining and suffering a foreseeable [*sic*] and avoidable complication of the surgical procedures performed by defendant, which complication [subacute bacterial endocarditis] endangered plaintiff's life and caused him to undergo intensive and expensive hospitalization and medical care, and which incapacitated him from his usual employment for one third of a year, which permanently aggravated a pre-existing cardiac valvular lesion as a result of which plaintiff must stay on regular and periodic prophylactic medications for the remainder of his natural life"; "that the illness he suffered as a consequence of defendant's neglect of ordinary professional care and caution has seriously and substantially reduced his life expectancy," etc.; and that he has been damaged to the extent of $153,479.10.

The defendant demurred setting up the bar of the statute of limitations. The Common Pleas Court sustained the demurrer, gave plaintiff thirty days to plead over and provided in its entry that "if the plaintiff fails to plead further it is considered by the court that the defendant go hence without day." Concurrently with the filing of this entry the plaintiff filed his notice of appeal. Eliminating from the assignments of error matter having reference to the basis of the trial court's decision, which we cannot consider because we have not been favored by an opinion by the trial court and such matter does not otherwise appear in our record, and eliminating matter which has reference to supposed facts which have not been alleged in the petition and which may not be considered on appeal from the sustaining of a demurrer, the assignments of error amount to a claim that the judgment of the trial court is contrary to law.

Although standing alone the judgment appealed from

4

might not meet the requirements of an appealable order, at least prior to the passage of thirty days from the time it was entered, the parties have raised no jurisdictional question, and we will conclude that by filing his notice of appeal the plaintiff waived any right to plead over and that such waiver operated to concurrently make the order final.

The law of malpractice in Ohio in its general application to physicians also has general application to dentists. *Cox* v. *Cartwright,* 96 Ohio App. 245; and *Klema* v. *St. Elizabeth's Hospital of Youngstown,* 170 Ohio St. 519, 521.

The application of the statute of limitations pertaining to malpractice by physicians has been developed by the Supreme Court in a long series of cases, principal of which are *DeLong* v. *Campbell,* 157 Ohio St. 22; *Bowers* v. *Santee,* 99 Ohio St. 361; and *Gillette* v. *Tucker,* 67 Ohio St. 106, 93 Am. St. Rep. 639. In the *Gillette case,* which involved a physician's leaving a surgical sponge in a patient and his continued failure to remove same, the Supreme Court held that "the statute of limitations does not commence to run against a right to sue and recover on account of such want of skill, care and attention, until the case has been so abandoned, or the professional relation otherwise terminated." That case was approved and followed in the *Bowers case* which involved the continued improper treatment of a bone fracture, and the court held that "in an action for a breach of the contract in such case [the contract of the surgeon to exercise the average degree of skill, care and diligence exercised by members of the same profession in the given situation], the statute of limitations does not begin to run until the contract relation is terminated." In the *DeLong case,* which involved the leaving of a surgical sponge in a patient and no continuation of the physician-patient relationship after the completion of the surgery, the rule was slightly modified in its terms, and the court held that "the statute of limitations begins to run *at the latest* upon the termination of the physician-patient relationship whether, within the time limited by the statute,

the act constituting malpractice is known or unknown by the one upon whom it was committed." (Emphasis added.)

From an examination of those cases it will be observed that the rule of law expressed in each is derived from an interpretation of the statute of limitations (now Section 2305.11, Revised Code) providing that "an action for * * * malpractice * * * shall be brought within one year after *the cause thereof accrued,"* as that statute relates to the peculiar facts of each case. The critical consideration in each, as well as the critical consideration here, is when does the cause of action *accrue?* In the *Gillette case* (67 Ohio St. 106) Judge Price recognized, at page 129 in the opinion, that a cause of action does not accrue until the injury or damage occurs, and said:

" * * * the mere closing of the incision in question over the sponge was not the plaintiff's cause of action, if no injurious consequences followed. But if evil consequences followed, and plaintiff was injured, *her cause of action accrues when her injuries occurred*; and if these injuries blended and extended during the entire period the surgeon was in charge of the case, her right of action *became complete* when the surgeon gave up the case without performing his duty." (Emphasis added.)

In the *Bowers case* the original trauma involved, the bone fracture, was not of the physician's making, and the malpractice consisted of the continued failure to give proper treatment, which extended the accrual of the cause of action or, as stated in the *Gillette case,* the completion of the right of action to the date upon which the physician-patient relationship ended, which was the last date upon which that physician could fail to give proper treatment. In the *DeLong case* Judge Stewart differed in his conclusions from Judge Price in the *Gillette case* by recognizing that the closing of the incision over the sponge constituted injury and in and of itself gave plaintiff a right of action, for he says at page 27 in the opinion (157 Ohio St.):

" * * * The cause accrues when the negligently-caused injury is inflicted. In other words, plaintiff had a right

to bring an action when Campbell negligently left the sponge within her wound and negligently allowed it to remain there during his professional relation with her. * * * "

Judge Stewart thus seems to recognize that although there was immediate trauma of the physician's making the time for bringing an action would extend during the professional relationship if the physician continued to leave the sponge within the wound. However, since there was no allegation in that case as to when the relationship ended and since the court presumed that it ended concurrently with the completion of the surgery the case really does not stand for any proposition that the continuance of professional relationship beyond the time of the original trauma and the continued failure during that time to remove the sponge from the wound would extend the time for bringing plaintiff's cause of action beyond the date of the original trauma. We thus have no existing case law in Ohio, even with respect to the physician-patient relationship, analogous on its facts to the instant case.

Is the instant case otherwise distinguishable from the cited cases for the reason that the relationship involved is that of the dentist-patient, or for any other reason? As argued by the defendant, in application to the pleaded facts, there is no claim that the oral surgical treatment was, in and of itself, improperly done or traumatic. The damages to the plaintiff, if any, occur not from the mechanical character of such treatment, but occur, if we accept the plaintiff's allegations, from the fact that the treatment was done at all. Further, if the plaintiff had been fortunate, the forces set in motion by the treatment may have been overcome by the work of nature and not have been followed by any injurious consequences. It is only by reason of the fact that injurious consequences did follow that the plaintiff could claim a cause of action against the defendant. There is no claim that such injurious consequences occurred on the last day of the treatment and the fair intendment of the allegations of the petition is that they did not occur until thereafter. We might presume, as did the Supreme Court in the

*DeLong case,* that, there being no allegation as to the date of the termination of the doctor-patient relationship, the same terminated upon the date of the last treatment. Upon such presumption we have a situation here where the injurious consequences or damages to the patient did not occur simultaneously with the act which is claimed to be the proximate cause thereof but occurred, if at all, at a time thereafter and after the termination of the contractual relationship. We further have a situation where, unlike a physician, and because of limitations on professional knowledge and ability and limitations on the right to do so, the defendant dentist could not himself take any corrective measures or administer any treatment to counteract either the forces allegedly set in motion by his treatment or the consequential cardiac condition.

In *Vasu* v. *Kohlers, Inc.,* 145 Ohio St. 321, Judge Hart had occasion to analyze and interpret the characteristics and elements of a cause of action and, in discussing the relationship of causes of action to the doctrine of *res judicata,* said, at page 331, in his opinion:

" * * * The same courts also take the position that, in actions predicated upon a negligent act, damages are a necessary element of each independent cause of action and no recovery may be had unless actual consequential damages are shown. * * * The very gist of an action for negligence is the damages to person or property negligently inflicted. In negligence cases the wrong is complete only when damages are suffered. The act done is not wrongful in itself, but only becomes so when an injurious consequence follows. * * *"

In 1 American Jurisprudence 2d 597, Actions, Section 68, it is stated:

"Ordinarily a good cause of action exists only when there is a concurrence of the wrongful act and a loss resulting therefrom. There must be some connection between the act complained of and the damage alleged. The wrong need not, however, be contemporaneous with the injury. What is essential is that the wrongful act charged be

the proximate cause of the damage complained of; the loss must be the direct result of, or proximately traceable to, the breach of an obligation owing to the plaintiff. * * * "

Most malpractice cases involve either an act which produces immediate actionable trauma or a course of treatment creating continued or repeated injurious consequences, and the Ohio cases hereinbefore cited, and most other cases, have reference to such situations. We find no case, such as here, where the consequential injury postdates both the last treatment and the presumed termination of the dentist-patient relationship. Logic would seem to require that the rule expressed in 54 Corpus Juris Secundum 123, Limitations of Actions, Section 168, should apply:

"*Negligence generally*. Ordinarily a cause of action for negligence accrues, so as to start the running of limitations, at the time of the act or omission on which the claim of negligence is based, although actual damage may not be ascertained, or first incurred or suffered, until a subsequent time. It has also been held, however, that a cause of action for negligence accrues, and limitations begin to run, when the forces put in motion by defendant produce injury to plaintiff, or from the date on which the injury was sustained and not that on which the negligent act was committed, * * * . In this connection it has been said that, where an act or omission constituting negligence causes direct or immediate injury, the action accrues at, and limitations run from, the date of the original act or omission, but that *where such act or omission is injurious only in its consequences the cause accrues at, and limitations run only from, the time of the consequential injury.*" (Emphasis added.)

The within situation is more closely analogous to those cases where a patient comes to a physician with a condition which he should, but fails to, treat, or to those cases where an individual becomes injured by the combination of an exposure and the passage of time. An example of the former is *United States* v. *Reid* (C. C. A., 5), 251 F. 2d 691, involving the failure of a physician to advise a patient of

incipient tuberculosis, which, because of failure of treatment, developed into an advanced tubercular condition, Judge Brown, in holding that the statute of limitations ran from the time such latter condition manifested itself, said at page 694, in his opinion:

" * * * Ordinarily there is a coincidence of negligent act and the fact of some damage. Where that occurs the cause of action comes into being and the applicable statute of limitations begins to run even though the ultimate damage is unknown or unpredictable. But it is not the wrongful, i. e., negligent act, which gives rise to the claim. For there must be damage caused by it. Until there is *some* damage, there is no claim and certainly a statute prescribing the time in which suit must be filed (whether a condition of right or remedy) can never operate prior to the time a suit would be permitted. * * * "

In the latter type of case, *Brush Beryllium Co.* v. *Meckley* (C. C. A., 6), 284 F. 2d 797, involving the contraction of berylliosis as a result of exposure over a long period of time, Judge Martin considered the *DeLong, Bowers* and *Gillette cases, supra,* distinguished them, and cited with favor the foregoing quote from the case of *United States* v. *Reid,* and the court held that notwithstanding the disease did not develop until more than two years after the last exposure to the deleterious fumes the two year personal injury statute of limitations did not start running until the disease manifested itself and was diagnosed as such.

On the basis of these authorities, there being no decision of our Supreme Court to the contrary with relation to an analogous factual situation, we conclude that where the violation of duty, constituting dental malpractice, causes no contemporaneous injury or damage to the patient but the forces set in motion by such violation proximately cause injury or damage thereafter, then, notwithstanding the relationship of dentist and patient has terminated between the time of the violation of the duty and the time the consequential injury or damage first manifests itself, the cause of action for malpractice does not accrue and

the statute of limitations pertaining to such cause of action does not begin to run until the date such consequential injury or damage first manifests itself.

Applying this conclusion to the instant case we must further conclude that since there is no allegation in the petition showing the date upon which the consequential injury first manifested itself we cannot determine from the face of the petition that the action was not brought within the time limited for the commencement of such actions and we find that the Common Pleas Court committed error prejudicial to the plaintiff, appellant herein, in so finding. For this error the ruling on the demurrer and the judgment entered thereon are reversed and vacated and the cause is remanded to the Common Pleas Court with instructions to overrule the demurrer and for further proceedings according to law.

*Judgment reversed.*

YOUNGER, J., concurs.

HERBERT, J., concurring in judgment. While I agree with the result reached by my colleagues, I do so upon other grounds.

The petition under consideration specifically alleges that the treatment to be performed consisted of the surgical removal of certain teeth and the furnishing and fitting of dentures. It further contends that oral surgery was performed on December 11, 1964, and on February 5, 1965, but nothing is stated relative to the remaining portion of the dentist-patient relationship, *i. e.*, the procedure involving the dentures. Construing, as we must, the attacked pleading most favorably to the plaintiff, I find nothing in the petition from which a termination date of the dentist-patient relationship can be established.

It has been firmly stated by the Supreme Court that the statute of limitations in physician malpractice actions

begins to run at a time no later than the date upon which the physician-patient relationship is terminated, irrespective of whether the patient is aware that malpractice has been committed upon him. (*DeLong* v. *Campbell, Exrx.*, 157 Ohio St. 22; *Lundberg* v. *Bay View Hospital,* 175 Ohio St. 133, 135.) The harsh propensities of this rule are recognized at pages 26 and 27, in the majojrity opinion in *DeLong,* and in the concurring opinion in *Lundberg.* However, the rule remains as the established law of Ohio until abrogated by the General Assembly or revised by the Supreme Court.

It could well be argued that there exists a definite and practical distinction between a dental oral surgeon and a medical oral surgeon, but under the present state of the law I would accept the appellant's contention that the two should be equated for the purpose of reviewing the petition under consideration.

HERBERT, J., of the Tenth Appellate District, sitting by designation in the Third Appellate District.