SMALL CAPS Simmons et al., Appellants, *v.* Riverside Methodist Hospital et al., Appellees. ▮

[Cite as Simmons v. Riverside Methodist Hospital (1975), 44 Ohio App. 2d 146.]

(No. 74AP-569—Decided March 27, 1975.)

*Messrs. Wolske, Blue & Gantz,* for appellants.

*Messrs. Crabbe, Brown, Jones, Potts & Schmidt* and *Mr. William W. Johnston,* for appellee Riverside Methodist Hospital.

*Messrs Bricker, Evatt, Barton & Eckler, Mr. Bruce G. Lynn* and *Mr. Thomas E. Workman,* for appellee Dr. Harry J. Keys.

Holmes, J. This is an appeal from a summary judgment as rendered by the Court of Common Pleas of Franklin County on behalf of the defendants, Riverside Methodist Hospital and Dr. Harry J. Keys, in a Complaint brought by plaintiff Carol Simmons and her husband, in his individual capacity, and as administrator of the estates of Steven Gary Simmons and Cynthia Carol Simmons, deceased infants of

Mr. and Mrs. Simmons. Such action is based on an act of alleged malpractice in the providing of professional medical services to Mrs. Simmons, in connection with the birth of her first child on June 27, 1968. The wrongful death claims brought on behalf of the deceased children were not ruled upon by the court, and were left pending.

. The facts in brief giving rise to this important case of general public interest are that the plaintiff entered the defendant Riverside Methodist Hospital for the care and treatment of her first pregnancy on the aforestated date of June 27, 1968, and after the birth of Richard, a blood test was performed on such newborn child, on such date, by an employee of the defendant hospital in order to determine the RH blood factor of Richard. The blood test as performed resulted in a report that showed that Richard had RH negative blood type. It is undisputed that the blood type of Mrs. Simmons is RH negative.

The Complaint alleges that Mrs. Simmons had, after the birth of Richard, requested Dr. Keys to administer to her a counter-reactive drug known as RhoGam, but that Dr. Keys failed to do so. Further, the Complaint alleges that the doctor had fallen below the acceptable professional standard of the community in that he failed to have further blood tests done on the child. The last time Dr. Keys saw Mrs. Simmons as a patient was on June 30, 1968, the day Mrs. Simmons was discharged from the hospital.

Subsequently, on October 20, 1971, Mrs. Simmons gave birth to a second child which was stillborn, due to what was determined to be erythroblastosis fetalis. Following such stillbirth, a blood test was taken of Richard, the first child of Mrs. Simmons, and the test revealed that Richard in fact had RH positive blood, rather than RH negative. Following the stillbirth of the second child, another child was born on September 25, 1972, but died some twenty-five minutes after the birth.

The plaintiffs brought these causes of action against the doctor and the hospital, claiming that the original blood test of Richard was negligently performed, in that Richard's RH blood factor was opposite of Mrs. Simmons, and that

the doctor had not properly prescribed the appropriate neutralizing drug, RhoGam.

The consideration of the trial court of the issues as presented upon a motion for a summary judgment were in a bifurcated status. The motion related only to the causes of action sounding in negligence, i. e., the actions of Mr. and Mrs. Simmons against the doctor and the hospital. Such motion did not relate to the two causes of action for wrongful death brought on behalf of the estate of the deceased infants.

Normally, the trial court not having stated the redundant, but magic words "finding no just cause for delay," we would have to find that such was not a final appealable order, but in this case it would be doing a vain thing to remand this matter, in that the determination of the matters presented on the two negligence cases for all intents and purposes determines the case. Accordingly, we shall proceed to decide this matter on the merits.

The trial court, upon a motion for summary judgment, dismissed both negligence actions, against the defendant hospital as well as against the defendant doctor, in that such actions had not been filed within the statute of limitations applicable to such actions. In the instance of the doctor it was determined that such action had not been brought within the one-year provision of R. C. 2305.11, which states, in pertinent part: "An action for * * * malpractice * * * shall be brought within one year after the cause thereof accrued * * *." The action against the defendant hospital was dismissed in that such action had not been brought within the two-year statute of limitations for actions for negligence as provided by R. C. 2305.10.

The plaintiffs present the single, but all encompassing assignment of error to the effect that the trial court erred in granting the defendant's motion for summary judgment. The argument of the plaintiffs in support of the assignment of error, in broad terms, is that a medical patient in Ohio should not be restricted with either the one-year statute of limitations within which to bring a malpractice action against a physician, or the two-year statute of limitations within which to bring a negligence action against a hospital,

until such time as the patient knows, or discovers, that such patient has been damaged by any claimed negligent action or inaction of the doctor or the hospital.

The plaintiffs argue that in this instance they were unaware of the substandard performance of the doctor, or the negligence of the employee of the hospital until the later blood test of the first born son, which was subsequent to the stillbirth of the second child. They argue quite effectively that Ohio should, as have a number of other states, adopt what is referred to as a broad discovery doctrine for the establishing of the accrual date for determining the statute of limitations within which to bring these types of malpractice and negligence actions for damage claimed within the doctor-patient and hospital-patient relationships.

Plaintiffs succinctly set forth the development of this phase of the law in Ohio as being one starting from a stance of strict compliance with the statute of limitations within which to bring such actions through a period as set forth in the following leading cases in Ohio on the subject: *Gillette* v. *Tucker* (1902), 67 Ohio St. 106, *Bowers* v. *Santee* (1919), 99 Ohio St. 361, and *Delong* v. *Campbell* (1952), 157 Ohio St. 22.

The pronounced legal proposition embodied in these cases is that a cause of action for medical malpractice accrues, at the latest, when the physician-patient relationship finally terminates. This principle of law was again reaffirmed in the case of *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164, wherein the court went to great lengths in reviewing the legal history of the limitations of actions in this field as considered both by the courts and the legislature of the state of Ohio.

The court, in *Wyler,* concluded that it should adhere to its former decisions of not adopting a discovery rule, "and refrain from judicially adopting that which has so clearly been legislatively rejected." Following *Wyler,* the Supreme Court again had the issue thrust upon it in the case of *Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198, a case in which metallic forceps and a sponge were left inside the plaintiff's body during surgery.

The court then, seemingly changing its game plan, differentiated *Wyler* as not being a "foreign object" case and applied the new law that tolled the statute of limitations until such time as objects are discovered. The court reaffirmed its acceptance of the principle that a cause of action for medical malpractice accrues, at the latest, when the physician-patient relationship finally terminates. However, the court added the new element of tolling, or not applying such accrual date, until the alleged negligent act is discovered. Such is the law as it exists at this moment in time.

The plaintiffs now argue that this court should not interpret *Melnyk* as being restricted to the "foreign object" but that we in fact should apply such rule to all cases involving a discovery of a negligently performed service or interpretive analysis by physicians or hospitals. The arguments·presented by plaintiffs are indeed compelling, and not without a great deal of merit. The plaintiffs reasonably argue that there should be no difference as legally afforded one who has a sponge or forceps left inside his body from one who, upon later discovery, has been found to have been given an incorrect blood test and analysis.

It is true that the end resultant may well, in a given instance, be more disastrous in the latter than in the former. However, these considerations and determinations are, we feel, within the policy-making area, and of a legislative nature for determination. At least the great public concern within this field of litigation in the malpractice field renders this subject a broader one than should be determined within this judicial district, and presents issues which, if judicially changed, should be changed by the Supreme Court of the state, not by this court.

At this point in time, we hold that the supreme judicial body of this state has spoken as to the issues presented. We interpret the case of *Melnyk* v. *Cleveland Clinic, supra,* as holding that the law of Ohio at this moment in time is that the doctrine of "discovery" shall not be extended beyond the discovery of a· "foreign object" found following a surgical case, to a case of the nature that we have before

this court involving an incorrect analysis or interpretation.

Specifically, reviewing the time sequence presented in this case, as pointed out in the brief of defendant Keys, that in any event whether or not this court adopts the discovery rule, and would extend the time for the filing of such malpractice action until one year after the discovery of the incorrect blood test of the first born child of the plaintiffs, such action would be beyond the period of the statute of limitations.

As to the defendant hospital, the statute of limitations as discussed hereinbefore, as applicable to actions for medical malpractice against physicians, is not the specific statute that is applicable to this limitation of action against hospitals for the negligence of the employees of the latter. The applicable statute of limitations for such actions against hospitals is R. C. 2305.10, which provides:

"An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

That such statute of limitations is the one to be controlling in an action against a hospital based on the doctrine of *respondeat superior* for the negligence of an employee of the hospital can be seen in the leading Ohio case of *Richardson* v. *Doe* (1964), 176 Ohio St. 370.

As to the relative dates applicable to an action against the defendant hospital, we noted that the blood test performed by an employee of the hospital was on the 29th day of June 1968. We hold that any negligent act of the defendant's employee would have occurred on such day, and the cause of action accrued on such date. The Complaint was not filed and the action was not commenced until some five years and three months after the act.

Based upon all of the foregoing, the assignment of error of the plaintiff is hereby overruled, and the judgment of the Court of Common Pleas of Franklin County is hereby affirmed.

*Judgment affirmed.*

REILLY and McCORMAC, JJ., concur.