Mary Lou **CLUTTER**, Executrix of the Estate of Russell L. Clutter, Plaintiff-Appellant,

v.

**JOHNS–MANVILLE SALES CORP.** et al., Defendants-Appellees.

George **DWIGGINS**, Plaintiff-Appellant,

v.

**COMBUSTION ENGINEERING, INC.** et al., Defendants-Appellees.

Martin J. **McGREEVEY**, Plaintiff-Appellant,

v.

**COMBUSTION ENGINEERING, INC.** et al., Defendants-Appellees.

Nos. 79–3004, 79–3114 and 79–3531.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1980.

Decided April 7, 1981.

Timothy M. Bittel, Sweeney, Mahon & Vlad, Thomas W. White, Robert E. Sweeney, Thomas Terry, Cleveland, Ohio, for plaintiff-appellant.

Thomas P. Meaney, Jr., Cleveland, Ohio, for Asbestos Corp., Ltd.

James P. Conroy, Cleveland, Ohio, for Bell Asbestos Mines, Ltd.

Charles W. Kitchen, Cleveland, Ohio, for Lake Asbestos of Quebec.

Richard E. Guster, Geo. Rooney, Jr., Akron, Ohio, for Cassiar Asbestos Corp.

Harley J. McNeal, Cleveland, Ohio, for Carey-Canadian Mines, Hedman Mines, H. K. Porter Co. and Unarco Industries.

Paul C. Wagner, Jr., McNamara, Gemperlin & Wagner and Albert J. Rhoa, Cleveland, Ohio, for Molded Material Div. of Carlisle Corp.

James L. McCrystal, Jr., Cleveland, Ohio, for World Bestos.

David Booth Beers, Shea & Gardner, Washington, D. C., for Cassiar Asbestos.

Lively M. Wilson, Stitts, McElwain & Fowler, Louisville, Ky., for defendants-appellees.

L. Edward York, York, Bonezzi & Thomas Co., LPA, Cleveland, Ohio, for Forty-Eight Insulation Co.

Robert B. Preston, Arter & Hadden, Cleveland, Ohio, for Combustion Eng.

Richard F. Stevens, Meyers, Stevens & Rea, Cleveland, Ohio, for Johns-Manville Sales Corp.

Parker M. Orr, Frank J. Cumberland, Baker & Hostetler, Cleveland, Ohio, for GAF Corp.

Michael M. Hughes, Thompson, Hine & Flory, William H. Wallace, Barbara J. Arison, Cleveland, Ohio, for Flinkote Co.

Thomas A. Dugan, Ulmer, Berne, Laronge, Glickmar & Curtis, Cleveland, Ohio, for Nicolet Indus.

William D. Bonezzi, Lakewood, Ohio, for Keene Corp., Keene Building Products and P. T. Brake Lining and Auto Friction Corp.

Robert D. Archibald, McNeal, Schick & Archibald, Cleveland, Ohio, for Unarco and Standard Asbestos.

Robert F. Hesser, Richard J. Disantis, Hesser, Armstrong, Toomey & Disantis Co., L. P. A., Cleveland, Ohio, for Raybestos-Manhattan, Inc.

Philip J. Hermann, Hermann & Hermann, James C. Cahn, Cleveland, Ohio, for Pittsburgh Corning Corp.

Robert G. Quandt, Quandt, Giffels & Buck, Cleveland, Ohio, for Armstrong Cork Co.

James P. Conroy, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for Rock Wool & Atlas Asbestos.

Jerome S. Kalur, James L. Malone, Reminger & Reminger, Cleveland, Ohio, for Celotex Corp. and Gatke Corp.

Thomas G. Herman, Squire, Sanders & Dempsey, H. Vincent E. Mitchell, Cleveland, Ohio, for Bendix Corp. and Owens-Corning Fiberglas.

Before MERRITT and KENNEDY, Circuit Judges, and MARKEY *, Chief Judge.

CORNELIA G. KENNEDY, Circuit Judge.

The sole question in this consolidated appeal is when, under the law of Ohio, a cause of action against a manufacturer of asbestos for injury due to exposure accrues.

Each of the three plaintiffs-appellants sued appellees, manufacturers of products containing asbestos, in separate actions before different District Court judges, claiming injury due to exposure to asbestos. Appellant Clutter was exposed to asbestos prior to 1962 when he helped dismantle a chemical plant and between 1962 and 1964 when he worked with asbestos-containing brake shoe linings. In February 1977, he was diagnosed as having pleural mesothelioma. He filed suit March 8, 1978. He died

August 17, 1978. (His widow continued his suit as a survival action and added a wrongful death claim. The wrongful death claim is not before this Court.) Appellant Dwiggins was last exposed to asbestos January 1976. He was disabled as of May 1976, when a tissue sample was taken from his lung. At that time asbestosis was not diagnosed. However, a recut from the same tissue was analyzed February 24, 1978 as showing asbestosis. He filed suit February 24, 1978. Appellant McGreevey worked as an asbestos insulation mechanic 1939–1973. He was first diagnosed as having asbestosis July 1977 and filed suit October 13, 1977.

The courts below held that these claims were governed by the statute of limitations found in Ohio Rev.Code § 2305.10. That section provides that an action for bodily injury shall be brought within two years after the cause thereof arose. The District Courts held that under Ohio law, plaintiffs-appellants' causes of action arose when the injury occurred, which in the present cases was when the last exposure to asbestos occurred. The courts refused to apply the date when the disease manifested itself.

The District Court relied upon *Wyler v. Tripi*, 25 Ohio St.2d 164, 267 N.E.2d 419 (1971), in which the Ohio Supreme Court refused to apply a discovery rule [1] in a malpractice case. Although the Ohio Supreme Court later articulated an exception to *Wyler* and applied the discovery rule to a suit alleging the doctor had negligently left a foreign object inside the patient, *see Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 290 N.E.2d 916 (1972), the District Courts believed the exception was only for foreign object medical malpractice cases.

Appellants argue that the District Courts misinterpreted the Ohio statute of limitations. They claim that on each occasion on which the Ohio Supreme Court has considered a statute of limitations question, the

---

* Honorable Howard T. Markey, Chief Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

1. As used in this opinion, "discovery rule" refers to a rule which provides that a cause of

action accrues when the injury has been discovered by the injured party, rather than to a rule of civil procedure relating to pre-trial discovery of evidence.

court has given the statute a more liberal interpretation to allow the parties to proceed to the merits. They distinguish *Wyler* and *Melnyk* as involving a different statute which deals with medical malpractice which is shorter for public policy reasons. They further argue that the interpretation applied by the District Courts is arbitrary and capricious, creates a special privilege and immunity, and deprives them of due process guaranteed by the Fourteenth Amendment of the United States Constitution and the right of access to the courts provided by the Ohio Constitution.

Appellees contend that the lower courts' interpretation is correct given *Wyler, Melnyk,* and recent Ohio appellate court decisions, and that the Supreme Court of Ohio does not always liberalize the statute of limitations when it reaches the issue. They argue that when the causal connection has been sufficiently established between an exposure and an injury such that it is fair to apply a discovery rule should be up to the legislature; that this is not a clear case like *Melnyk* as proof of cause of injury is complex and, given the long latency period of the disease, the danger of stale claims is great. They contend the interpretation applied below is not so arbitrary as to offend due process and, furthermore, the constitutional claims were not raised below which precludes this Court from considering them.

By a recent amendment to § 2305.10, enacted after these cases had been filed, the Ohio legislature has provided a discovery rule for asbestosis.

> For purposes of this section, a cause of action for bodily injury caused by exposure to asbestos or to chromium in any of its chemical forms arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the · date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured by the exposure, whichever date occurs first.

*See* Act of June 12, 1980, File 216, Ohio Rev.Code (Page's): 1980 Legislative Bulletin, at 124. It does not, however, benefit plaintiffs. The Ohio Constitution, statutes, and case law clearly indicate that the amended statute does not apply to cases already filed before the amendment was enacted. Section 28 of the Ohio Constitution states that the "general assembly shall have no power to pass retroactive laws, ..." Section 1.58(A)(1) of the Ohio Rev. Code states that a reenactment, amendment or repeal of a statute does not affect the prior operation of the statute or any prior action taken thereunder. The Ohio courts have refused to apply an amendment to statutes affecting the operation of a statute of limitations whether the amendment would have tolled the running of the statute, *see Pickering v. Peskind,* 43 Ohio App. 401, 183 N.E. 301 (1930), or would have shortened the period thereby barring the plaintiff's cause of action, *see Gregory v. Flowers,* 32 Ohio St.2d 48, 290 N.E.2d 181 (1972); *Ham v. Kunzi,* 56 Ohio St. 531, 47 N.E. 536 (1897). This Court need not decide whether or not the amendment would apply to a cause of action from exposure to asbestos which was diagnosed before the statute was amended but suit was not filed until after, as that case is not before us.

A federal court sitting in diversity must apply the law of the state's highest court. If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *See West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Ruth v. Bituminous Casualty Corp.,* 427 F.2d 290, 292 (6th Cir. 1970).

The record does not indicate any dispute that asbestosis is an insidious disease which sometimes manifests itself many years after exposure to asbestos. This Court has already considered Ohio law as it applies to the accrual of a claim against a manufacturer for injury from an insidious disease in *Brush Beryllium Co. v. Meckley,* 284 F.2d

797 (6th Cir. 1960). There, the plaintiff had sued for injury from berylliosis which was manifested almost ten years after her last exposure to beryllium. This Court found that there was no applicable Ohio law to govern the issue and held her claim could not accrue and the statute of limitations could not run until some damage had occurred. *See* 284 F.2d at 800. Thus, plaintiff was not barred by the statute of limitations though she was last exposed in 1949, her disease manifested itself March 1958, and she sued April 1959. This Court refused to follow a contrary unpublished decision by the court of appeals for which a motion to the Ohio Supreme Court to certify the record on appeal had been denied, as Ohio has a syllabus rule, and only pronouncements stated in a syllabus or an opinion per curiam or an opinion by the court—that is, the Supreme Court of Ohio—represents a pronouncement by the Supreme Court of Ohio. *See* 284 F.2d at 798; *State, ex rel. Canada v. Phillips*, 168 Ohio St. 191, 151 N.E.2d 722 (1958). The Court noted that Ohio medical malpractice cases held that the cause of action ran upon the termination of the doctor-patient relationship, whether known or unknown by the patient, but held those cases were distinguishable as they involved definite traumatic injury, such as leaving a sponge or other foreign object in the body, rather than a "slowly developing insidious disease." 284 F.2d at 799.

The present case finds the law of Ohio much in the same posture. No decisions by the Ohio Supreme Court directly on point have been found. One intermediate Ohio appellate court found the statute of limitations for asbestosis ran from the date of last exposure, *see Spangler v. Southern Mills, Inc.*, No. 77Ap–586 (Feb. 2, 1978), appeal dismissed for failure to state substantial constitutional question and motion to certify record on appeal overruled (Ohio S.Ct. May 11, 1978). But *Spangler* was unpublished and the Ohio Supreme Court did not produce a syllabus, per curiam, or opinion "by the court." Thus, *Spangler* is not controlling.

Appellees argue that intervening cases by the Ohio Supreme Court indicate that *Brush Beryllium* did not accurately decide Ohio law. They cite *Amer v. Akron City Hospital*, 47 Ohio St.2d 85, 351 N.E.2d 479 (1976); *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 290 N.E.2d 181 (1972); *Wyler v. Tripi*, 25 Ohio St.2d 164, 267 N.E.2d 419 (1971). For reasons stated below, this Court is not persuaded these cases require it overrule *Brush Beryllium*.

At the outset, one must note that *Brush Beryllium* and *Wyler* and progeny are not considering the same rule for determining when a cause of action arises. *Wyler* concerns a discovery rule—whether or not the cause of action arises when the injured party discovered or should reasonably have discovered the injury. *Brush Beryllium* focuses on a manifestation rule—whether or not a cause of action arises when the injury is manifested. Although similar, these tests are not the same for an injury may be manifested such that some symptoms are present and one *could* have discovered the injury had one made an appropriate investigation as to the cause even though the symptoms were not such that a reasonable person *would* have investigated the cause.

The syllabus for *Wyler* states:

Under R.C. 2305.11, a cause of action for medical malpractice accrues, at the latest, when the physician-patient relationship finally terminates. (*Gillette v. Tucker*, 67 Ohio St. 106 [65 N.E. 865]; *Bowers v. Santee*, 99 Ohio St. 361 [124 N.E. 238]; and *DeLong v. Campbell*, 157 Ohio St. 22 [104 N.E.2d 177]; followed.)

In its opinion, the court in *Wyler* noted that many jurisdictions have adopted a discovery rule because applying a rule which starts the running of the statute of limitations when the tortious act or termination of the relationship occurs can be very harsh where the victim could not have known about the resulting injury until after the limitations period ran. However, the court concluded that as the termination of the relationship rule had been in effect for quite some time and the legislature had not amended the statute, the legislature was the proper body

for changing the rule as to when the statute of limitations should start running in malpractice cases.

However, in *Melnyk*, despite legislative inactivity, the court went ahead and adopted a discovery rule. There, the surgeon had left a sponge and a metal forceps inside the patient's body. The patient sued within one year of discovery but more than one year after the doctor-patient relationship had terminated. The court decided that as the problem presented by stale claims was remote—there being no conceivable defense to leaving foreign objects in a patient's body that did not belong there—and as the patient was totally dependent upon the surgeon, a discovery rule should apply. It distinguished *Wyler* as not involving a foreign object. It held that *Wyler* did not have to be overruled as the syllabus in *Wyler* did not have the all-inclusive language of the earlier cases, *DeLong v. Campbell*, 157 Ohio St. 22, 104 N.E.2d 177 (1952) and *Gillette v. Tucker*, 67 Ohio St. 106, 65 N.E. 865 (1902). In *DeLong*, another sponge case, the court held "As to a cause of action for malpractice by a physician, the statute of limitations begins to run at the latest upon the termination of the physician-patient relationship whether, within the time limited by the statute, the act constituting malpractice is known or unknown by the one upon whom it was committed." *Gillette*, another sponge case, held that where a doctor leaves a sponge in a patient, and the sponge remains there for the length of the doctor-patient relationship, then the cause of action for leaving the sponge in the patient accrues when the doctor-patient relationship terminates. To the extent these cases conflicted with *Melnyk*, they were disapproved. *See* 32 Ohio St.2d at 201 n. 6, 290 N.E.2d 916.

Subsequent Ohio appellate court decisions have limited *Melnyk* to cases involving foreign objects like sponges or forceps left inside a patient. *Simmons v. Riverside Methodist Hospital*, 44 Ohio App.2d 146, 336 N.E.2d 460 (1975) (statute of limitations for allegation of malpractice for misdiagnosis of first child's Rh factor which resulted in stillborn death three years later and death

of another child next year shortly after birth was not tolled until discovery of the negligence); *Pritchard v. Riverside Methodist Hospital*, 64 Ohio App.2d 125, 411 N.E.2d 1343 (1978) (statute of limitations not tolled until discovery that alleged overdose of radiation caused damage).

The United States Court of Appeals for the Third Circuit has concluded that in *Melnyk*, the Ohio Supreme Court implicitly rejected the rationale of *Wyler* that only the legislature may adopt a discovery rule. Therefore, the Third Circuit, over a strong dissent, applied a discovery rule to a products liability suit against a drug manufacturer for injuries suffered three years after plaintiff discontinued using defendant's birth control pills. *See McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663–67 (3d Cir. 1980). In addition, *see* 6 Akron L.Rev. 265 (1973).

In *Amer, supra*, the Ohio Supreme Court held that although the statute of limitations on a patient's claim for medical malpractice against her doctor does not begin to run until the doctor-patient relationship terminated, her husband's claim for loss of consortium due to the malpractice was not entitled to the termination rule. The husband's claim is not an action for malpractice, the court ruled, and is therefore governed by Ohio Rev.Code § 2305.09(D). The appellant had suggested in his brief that a discovery rule be applied, but this suggestion was not incorporated into his proposition of law. The certification was restricted to the sole issue in his proposition of law. Therefore, although the dissent would have applied a discovery rule, the Ohio Supreme Court refused to consider this proposition. *See* 47 Ohio St.2d at 87 n. 2, 351 N.E.2d 479.

This Court need not decide whether or not *Melnyk* overruled *Wyler sub silentio*. Both those cases dealt with the rules governing the statute of limitations for a medical malpractice claim. *Amer* indicates that, whatever the rule for the husband's tort claim for loss of consortium, the rules for medical malpractice do not apply. Other

decisions by the Ohio Supreme Court indicate the limited scope of its malpractice decisions. *Wyler* has been applied to a claim alleging legal malpractice because *Wyler* dealt with malpractice and malpractice cases should be treated alike, *see Keaton Co. v. Kolby,* 27 Ohio St.2d 234, 237, 271 N.E.2d 772 (1971), but was not applied to bar a claim against the professional conduct of a professional engineer which was defined as not malpractice, *see Hocking Conservancy District v. Dodson-Lindblom Assoc.,* 62 Ohio St.2d 195, 404 N.E.2d 164 (1980). Thus *Wyler, Melnyk,* and our own decision in *Shrewsbury v. Smith,* 511 F.2d 1058 (6th Cir. 1975), which involved medical malpractice, need not be applied to the tort claims presently and do not compel us to reverse or reject our decision in *Brush Beryllium.*

An examination of Ohio tort cases does not persuade this Court that *Brush Beryllium* should be overruled. For, although early tort cases suggest that the statute of limitations begins to run when the tortious conduct occurred, none of those cases involved a progressive disease where damage may be unknown and unknowable at the time the tortious exposure occurred. The syllabus in *Kerns v. Schoonmaker,* 4 Ohio 331 (1831), states that the statute of limitations commences to run as soon as the injurious act complained of is perpetrated, although the actual injury is subsequent and could not immediately operate. However, in the opinion, the court did not go so far. The plaintiff sued a justice of the peace for negligently failing to docket an entry that Mr. Elliot was security for a judgment against Mr. Stewart, who later died insolvent. The court said that at the latest, the statute of limitations started running when the plaintiff sued Mr. Elliot and Mr. Elliot claimed he did not owe on the judgment, as at that point the plaintiff's remedy against the justice was complete. *See* 4 Ohio at 333. Other Ohio cases have rejected a discovery rule for tort claims. *See Bryant v. Swetland,* 48 Ohio St. 194, 27 N.E. 100

(1891) (action to reform instrument on ground of mistake accrues upon execution of instrument; statute of limitations not postponed to discovery of the mistake); *Williams v. Pomeroy Coal Co.,* 37 Ohio St. 583 (1882) (defendant had overworked onto plaintiff's land before plaintiff purchased it; unknowingly plaintiff struck defendant's overworked mine and water flowed into plaintiff's mine; cause of action arose with trespass, whether or not cause of action was known to plaintiff);[2] *Minister Loan & Savings Co. v. Laufersweiler,* 67 Ohio App. 375, 36 N.E.2d 895 (1940) (action by corporation against former officers and directors to recover damages for their ultra vires and negligent acts accrued when acts were committed whether known or not by the corporation and notwithstanding fact that officers and directors concealed existence of cause of action). In all of these cases, however, the damage was contemporaneous with the act, although the plaintiff did not discover the damage until later. In the case of asbestosis, however, the damage may sometimes not be manifest until long after the exposure ceases.

Moreover, in other products liability cases in Ohio or in this Court applying Ohio law, the courts have assumed the limitations period ran from the date the plaintiff was damaged *rather than the date of the defendant's negligent tortious conduct.* Those cases do not start the running of the statute of limitations from the date the defective product left the manufacturer or the date the consumer purchased the product. In *Val Decker Packing Co. v. Corn Products Sales Co.,* 411 F.2d 850 (6th Cir. 1969), the buyer sued the contractor who had improperly installed storage facilities which resulted in spoiled meat. This Court held the cause of action accrued on the date the installation was completed, not the date of discovery of the spoilage, and applied the four-year statute of limitations for actions arising from contract. However, the Ohio Supreme Court in *U.S. Fidelity & Guaranty*

---

**2.** The legislature later indicated its disagreement with this result by enacting an amendment to § 2305.09 of the Ohio Rev.Code which

provided for a discovery rule for trespassing under ground or injury to mines.

*Co. v. Truck & Concrete Equipment Co.*, 21 Ohio St.2d 244, 257 N.E.2d 380 (1970), distinguished *Val Decker* as *Val Decker* involved parties who had had a contractual relationship. In *U.S. Fidelity & Guaranty Co.*, the parties were not in a contractual relationship. Defendant was the seller of a truck; plaintiff was the insurance company for the lessee of the truck that had to pay for the damages when the truck collapsed. The Ohio court held that § 2305.10—the statute involved in the case before this Court—was the applicable statute of limitations. The statement of the case indicates that the court assumed the statute of limitations began to run when the truck collapsed, rather than when the allegedly defective item left the defendant's control. In *Mahalsky v. Salem Tool Co.*, 461 F.2d 581 (6th Cir. 1972), another products liability case claiming injury due to a defective product, this Court applied § 2305.10 to bar plaintiff's claim. *See* 461 F.2d at 584. However, again, the Court assumed the limitations period began running when the product broke, causing damages. *See* 461 F.2d at 583. The Ohio Supreme Court held that a seller of a defective product would be strictly liable for injury caused to the consumer if the product reached the consumer without substantial change. *See Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977). The court did not discuss the statute of limitations question, but once again it appears to have considered the date of injury rather than the date of defendant's negligent conduct as controlling. There, the machine in question was sold by defendant in 1954. The machine passed through several hands until plaintiff's employer bought the machine in 1971 and plaintiff was injured in 1972. Suit was filed in 1974. The lawsuit would have only been within the two-year statute of limitations if the date plaintiff suffered injury were the date the statute began running.

As the cases decided since *Brush Beryllium* do not compel a different result, and since Ohio products liability cases implicitly use the date a latent defect manifests itself by causing injury, this Court concludes that it should continue to adhere to *Brush Beryl-*

*lium* and hold that Ohio would apply a manifestation rule for determining when the cause of action from asbestosis should accrue under Ohio law. Support for this position can be found in *Cook v. Yager*, 13 Ohio App.2d 1, 233 N.E.2d 326 (1968), the only Ohio case that this Court has found that dealt explicitly with a manifestation rule rather than a discovery rule. There the patient sued his dentist complaining not that any malpractice was committed during oral surgery, but rather that the defendant did not take an adequate history as a result of which a complication from the surgery endangered his life, requiring hospitalization, and permanently aggravated a preexisting cardiac valvular lesion. The court, relying on language in *Gillette* that the cause accrues when the injury occurs, held that the plaintiff was not barred although the dentist-patient relationship had been terminated for over a year prior to suit. The court found no Ohio cases where the consequential injury postdated the last treatment and the termination of the relationship, distinguishing other medical malpractice cases as one involving an act which produced immediate actionable trauma or a course of treatment which created continued or repeated injurious consequences. Hence, the court held that where the violation of duty causes no contemporaneous injury or damage to the patient but instead the forces set in motion by such violation proximately causes injury or damage thereafter, then notwithstanding the termination of the doctor-patient relationship, the cause of action does not accrue and the statute of limitations does not run until the consequential injury or damage first manifests itself. *See* 13 Ohio App.2d at 8–10, 233 N.E.2d 326.

In the present cases, the injurious exposure did not cause contemporaneous injury, but rather set forces in motion which later manifested themselves in asbestosis, according to plaintiffs' claim. Therefore, their causes of action should be held not to have accrued until their diseases were manifested. That the legislature recently amended the statute to create a discovery rule for

asbestos-related diseases does not persuade this Court that *Brush Beryllium* is no longer good law. That one legislature enacts a discovery rule does not prove that the prior legislature had not wanted a discovery rule. The legislature may have enacted the rule because of judicial reluctance to liberally determine when the cause of action accrued. Moreover, the manifestation rule pronounced in *Brush Beryllium* is not necessarily the same as a discovery rule. Although manifestation and discovery may coincide, a condition may be manifested before one has, or reasonably should have, discovered the cause of the condition.

This Court concludes that the District Courts erred when they held that the statute of limitations started running on the date of the last exposure and the plaintiffs' claims were therefore barred. This Court holds the claims for insidious diseases caused by exposure to asbestos accrue under Ohio law when the disease has manifested. These cases are remanded to the District Courts for a determination when the diseases manifested.[3]

---

**3.** Because of this Court's disposition on the basis of Ohio law, it need not reach the constitutional questions.