John COLEMAN, Plaintiff-Appellant,

v.

WESTERN ELECTRIC CO., INC., Defendant-Appellee.

No. 80–1283.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1981.

Decided March 3, 1982.

John F. Chambers, Ripple, Chambers & Steiner, Detroit, Mich., C. Douglas Lovett, Cleveland, Ohio, for plaintiff-appellant.

David R. Getto, Robert F. Riley, Dice, Sweeney & Sullivan, Detroit, Mich., for defendant-appellee.

Before KEITH, Circuit Judge, WEICK, Senior Circuit Judge, and ALLEN *, District Judge.

KEITH, Circuit Judge.

This appeal challenges the propriety of an order of the United States District Court for the Eastern District of Michigan denying a Motion to Amend Judgment. On appeal, the plaintiff-appellant, John Coleman, argues that the district court should not have reduced his jury award by the percentage of his contributory negligence. Specifically, Coleman contends that, as a matter of Michigan law, contributory negligence should not diminish recovery where the absence of an adequate safety device was the proximate cause of injuries sustained. We agree. For the reasons below, we reverse the judgment of the district court.

This personal injury action arises from the injuries which John Coleman sustained while he was working on the premises of the defendant, Western Electric Co., Inc. ("Western Electric"). On February 26, 1976, Coleman's arm was crushed as he helped Western Electric employees unload four reels of telephone cable at Western Electric's warehouse. The following facts are relevant to this appeal.

John Coleman was a truck driver who had been employed by Trans-Con Trucking ("Trans-Con"), a Michigan trucking company, for over 40 years. On February 26, 1976, Trans-Con directed Coleman to deliver some telephone cable to Western Electric.

The telephone cable which Coleman delivered was contained on four large reels. Each reel was approximately 7 feet in diameter, 4½ feet wide, and weighed between 5,000 and 7,000 pounds. Coleman transported these reels in an enclosed tractor-trailer truck. Three of the reels were placed in the trailer so that they could be rolled from the front of the trailer to its rear entrance. The fourth reel was placed so that it could roll from one side of the trailer to the other. This fourth reel was placed immediately inside the rear door of the trailer.

Coleman arrived at Western Electric's warehouse around 9 a.m. Norman Kwatis, a supervisor at Western Electric, instructed Coleman to back his truck into a dock for unloading. Coleman backed the truck into the dock and discovered that the trailer was between 4 and 6 inches lower than the dock. Coleman pointed out the height differential between the trailer and the dock to Kwatis, and requested the use of another dock, equipped with a levelator.[1]

On February 26, 1976, at least two of the levelators at Western Electric's warehouse were broken. Coleman was informed that the docks with operational levelators would be occupied for several hours. Kwatis asked Coleman to assist Mark Javor, anoth-

---

* Hon. Charles M. Allen, Chief Judge, Western District of Kentucky, sitting by designation.

1. A levelator is a loading device consisting of a metal plate over a hydraulic lift. The levelator is used while the trailer is parked at the dock. The rear wheels of the trailer are rolled onto the levelator, and the bed of the trailer can then be raised or lowered during unloading. Thus,

er Western Electric employee, in unloading the reels without a levelator.[2]

Kwatis demonstrated a procedure which would enable the reels to be unloaded without using a levelator. Although Coleman had delivered dozens of shipments of cable to Western Electric's warehouse over the years, he had never assisted in nor witnessed the unloading of cable without using a levelator. Javor was also unaware of this procedure.

A forklift was used to unload the reel nearest the rear door of the trailer. Because this reel had been loaded so that it could roll from one side of the trailer to the other, the forklift remained on the dock and lifted this reel off the trailer.

The remaining three reels, however, could not be unloaded by using the forklift. These reels had been loaded so that they could roll the length of the trailer. The weight of the reels and the width of the trailer prevented Coleman, Javor and Kwatis from repositioning the reels in the trailer. Moreover, the forklift could not negotiate the height differential between the trailer and the dock. Javor allegedly suggested that the remaining three reels be rolled to the rear of the trailer, and then lifted out by using chains and a forklift. Kwatis rejected this suggestion. Instead, he instructed Coleman and Javor to unload the reels manually.

Coleman, Kwatis and Javor attempted to remove the first of the three remaining reels.[3] The three men employed a manual procedure which combined their strength and the momentum of a rolling reel. They would roll the reel up to the dock and allow the reel to bounce off the dock. The momentum created by bouncing the reel off the dock would cause it to bounce off one of the remaining reels. The momentum created by bouncing the reel against the stationary reel would enable the men to bounce the reel against the dock with greater force. This bouncing procedure was repeated sev-

eral times before the three men could unload the first remaining reel. Kwatis took a coffee break after one reel had been unloaded using this method. However, he allegedly instructed Javor and Coleman to unload the remaining two reels.

Coleman's injury occurred while he and Javor attempted to unload one of the remaining reels. Coleman and Javor repeated the bouncing procedure discussed previously. As Coleman stood in the trailer facing the rear door, the stationary reel began to roll toward the door. Apparently Coleman was unaware that this reel was approaching him from the front of the trailer. The reel which had been stationary collided with the reel which Javor and Coleman were attempting to unload. This collision crushed Coleman's arm and injured his back.

A jury of the United States District Court returned a verdict for Coleman, and awarded him damages of $400,000. However, the jury also found that Coleman was 65% contributorily negligent. The district court, relying on Michigan's comparative negligence rules, entered a judgment for Coleman of $140,000. This judgment was 35% of the jury's award for damages.

Coleman filed a motion to amend the judgment, claiming that the district court's reduction of the jury award was erroneous under Michigan law. Specifically, Coleman argued that under Michigan law contributory negligence cannot reduce the recovery where the plaintiff's injury was caused by the absence of, or a defect in, safety equipment. The district court denied Coleman's motion to amend the judgment. Coleman perfected this appeal.

On appeal, Coleman argues that the district court erred as a matter of Michigan law by reducing the jury's award by the amount of contributory negligence attributed to him. We agree.

The district court reasoned that Coleman failed to provide any authority for his claim

---

workers unloading a trailer can use the device to keep the trailer bed level with the dock.

2. Coleman claimed that his employment contract and Interstate Commerce Commission

regulations required truck drivers to assist in unloading if asked to do so.

3. Javor testified that moving a reel without the use of a forklift was similar to pushing a car.

that, as a matter of Michigan law, comparative negligence should not be considered in the instant case. The court noted that the Michigan Supreme Court had not addressed this issue. Thus, the district court refused to amend the judgment and reinstate Coleman's award of $400,000.

The district court was correct in applying Michigan law in this diversity action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is well settled under Michigan law that a worker's contributory negligence does not bar recovery where the absence of an adequate safety device is the proximate cause of the worker's injury. *Tulkku v. Mackworth Rees*, 406 Mich. 615, 281 N.W.2d 291 (1979); and *Funk v. General Motors Corp.*, 392 Mich. 91, 220 N.W.2d 641 (1974).

In *Funk, supra*, the Michigan Supreme Court held that contributory negligence does not bar a plaintiff's recovery if the trier of fact finds that the employer's breach of a commonlaw duty to provide safety equipment is the cause in fact of plaintiff's injury. In holding that contributory negligence would not bar a plaintiff's recovery, the *Funk* court recognized that workers have little discretion in deciding whether to work in dangerous situations or areas. Specifically, the court stated:

> "Workmen such as the present plaintiff, who ply their livelihoods on ladders and scaffolds, are scarcely in a position to protect themselves from accident. They usually have no choice but to work with the equipment at hand, though danger looms large." *Funk, supra* at 113 [220 N.W.2d 641], quoting *Koenig v. Patrick Construction Corp.*, 298 N.Y. 313, 318–319, 83 N.E.2d 133, 135 (1948).

In *Tulkku v. Mackworth Rees, supra*, the Michigan Supreme Court affirmed *Funk* and extended its rationale to products liability cases. The court in *Tulkku* held:

> "contributory negligence is no bar to recovery where evidence has been presented of defendant's causal negligence in the design or manufacture of a safety de-

vice." *Tulkku, supra* at 623, 281 N.W.2d 291.

The *Tulkku* court adopted the fundamental policy rationale on which *Funk* was based. The court also affirmed another policy consideration articulated in *Funk*:

> "The policy behind the law of torts is more than compensation of victims. It seeks also to encourage implementation of reasonable safeguards against risks of injury." *Funk, supra*, 104, 220 N.W.2d 641. (Emphasis added)." *Tulkku, supra* at 621, 281 N.W.2d 291.

There were two important legal developments during the appeal of *Tulkku, supra*. First, the Michigan Supreme Court replaced the doctrine of contributory negligence with a form of comparative negligence. *Placek v. Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979). Second, the Michigan legislature substituted comparative negligence for contributory negligence in products liability actions. Mich.Comp.Laws § 600.2945. In deciding *Tulkku*, however, the Michigan Supreme Court expressly declined to consider the effect of *Placek, supra*, or the new legislation.[4]

 The district court denied Coleman's motion to amend the judgment because the Michigan Supreme Court had not addressed the effect of *Placek* on *Funk* and *Tulkku*. The general rule in diversity cases is that a federal court must apply the law as expressed by the highest court of the state. *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151 (6th Cir. 1981); *Ruth v. Bituminous Casualty Corp.*, 427 F.2d 290 (6th Cir. 1970). If the highest court of the state has not spoken, however, then the federal court ascertains what the state law is and applies it. *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Clutter, supra* at 1153. A principle announced by a state appellate court is an *Erie* indicator for ascertaining state law and should not be ignored by a federal court unless other *Erie* indicators suggest that the state's highest court would decide otherwise. *West v.*

---

**4.** The court reasoned that these issues had not been argued or briefed in *Tulkku. Tulkku, su-* *pra* at 623, 281 N.W.2d 291.

*AT&T, supra* at 237, 61 S.Ct. at 183; *Clutter, supra* at 1153; *Ruth, supra* at 292.

The effect of *Placek* has been considered in three cases by the Michigan Court of Appeals. *See Timmerman v. Universal Corrugated Box Machinery Corp.,* 93 Mich. App. 680, 287 N.W.2d 316 (1979); *Stambaugh v. Chrysler Corp.,* 96 Mich.App. 166, 292 N.W.2d 510 (1980); and *Tulkku v. Mackworth Rees,* 101 Mich.App. 709, 301 N.W.2d 46 (1980). Therefore, we must ascertain the applicable Michigan law from these cases unless we are convinced that the Supreme Court of Michigan would decide otherwise.

*Timmerman, supra,* involved a products liability action against a manufacturer. The plaintiffs based their suit on the manufacturer's alleged failure to provide safety devices and an alleged breach of an implied warranty of fitness. The court in *Timmerman* held:

> "[i]n view of the policy reasons underlying the *Funk* and *Tulkku* decisions, being the fostering of worker protection and encouragement of employers and manufacturers to provide proper and adequate safety equipment, it seems to us that the employee's negligence cannot be raised as a defense, whether it be under a doctrine of contributory negligence or comparative negligence." *Timmerman, supra* at 686, 287 N.W.2d 316.

In *Stambaugh, supra,* the Michigan Court of Appeals reached a similar result. The plaintiff in *Stambaugh* brought a negligence action against the general contractor and the owner of the premises on which he was injured. The trial court instructed the jury that they could hold the general contractor liable if they found that its failure to provide necessary safety equipment proximately caused the plaintiff's injuries. The trial court also instructed the jury that the plaintiff's contributory negligence barred his recovery. The court of appeals in *Stambaugh* held that the trial court

erred in instructing the jury that a finding of contributory negligence bars recovery. *Stambaugh, supra* at 171, 292 N.W.2d 510. The *Stambaugh* court reasoned:

> "Contributory negligence is not an available defense when defendants have failed to provide an adequate safety device. *Tulkku v. Mackworth Rees Division of Avon Industries, Inc.,* 406 Mich. 615, 281 N.W.2d 291 (1979)." *Stambaugh, supra* at 171, 292 N.W.2d 510.

The court also noted that comparative negligence would be improper since a finding of causal negligence by the defendant prevents any consideration of the plaintiff's negligence. *Stambaugh, supra* at 173 n.3, 292 N.W.2d 510, citing *Placek, supra.*

The Michigan court of appeals also addressed this issue when the Michigan Supreme Court remanded *Tulkku* for consideration of the applicability of *Placek* and the newly enacted comparative negligence statutes. On remand, the court of appeals held that after *Placek,* a plaintiff's recovery may not be diminished by his own negligence where the defendant's liability arises from the failure to prove adequate safety devices. *Tulkku, supra,* 101 Mich.App. at 720, 301 N.W.2d 46. The court of appeals in *Tulkku* based its holding on the Michigan Supreme Court's decisions in *Funk* and *Tulkku.*

■ The principle announced in *Timmerman, Stambaugh* and *Tulkku* is clear. Even after *Placek,* a plaintiff's negligence cannot reduce his recovery where the defendant's failure to provide an adequate safety device is the proximate cause of the plaintiff's injuries. There is nothing which indicates that the Michigan Supreme Court would decide this issue differently.[5] Therefore, we conclude that the court of appeals' decisions in *Timmerman, Stambaugh,* and *Tulkku* provide the applicable Michigan law in the instant case.

---

5. All three cases rely on the Michigan Supreme Court's decisions in *Funk, supra,* and *Tulkku, supra.* Moreover, as the court of appeals explicitly noted in *Tulkku,* the policy considerations articulated in *Funk* and *Tulkku* apply to prevent a bar of plaintiff's recovery and to

prevent a diminution of plaintiff's recovery. *Tulkku, supra,* 101 Mich.App. at 719–720, 301 N.W.2d 46. Finally, the Michigan Supreme Court in *Tulkku* remanded that case to the court of appeals so that the effect of *Placek* on *Funk* and *Tulkku* could be addressed.

At trial, the district court instructed the jury concerning Coleman's contributory negligence:

> "In determining whether John Coleman may have negligently contributed to his injuries, if you find that one, the plaintiff upon his entry onto the defendant's property in Plymouth, Michigan, came under the direct control of the defendant through one of its employees; two, the defendant was negligent in that it failed to provide adequate devices for persons entering upon the premises for business purposes; and three, the absence of a levelator was a proximate cause of the injuries of which the plaintiff complains, then contributory negligence is not to be considered by the jury as a valid defense to. the claim of the plaintiff." (App. at 62–63)

Thus, if the jury found that the absence of an adequate safety device, the levelator, was the proximate cause of Coleman's injuries, then Coleman's contributory negligence was irrelevant.

The jury found that Western Electric was negligent, and that its negligence was the proximate cause of Coleman's injury. The jury also found, however, that Coleman was 65% contributorily negligent.

Western Electric argues that the jury's findings indicate that Coleman proffered several theories of Western Electric's negligence, and the jury could have based Western Electric's liability on one of these alternative theories.[6] Thus, if the jury had found that Western Electric was liable based on any of the alternative theories, then Coleman's negligence could bar his recovery. There is a superficial appeal to Western Electric's argument.

We conclude, however, that Coleman did not present several theories of negligence. In our view, Coleman's sole theory of negligence is that Western Electric failed to provide an adequate safety device, an operational levelator.[7] If an operational levelator had been provided, then Javor and Coleman would have been able to unload the reels safely. Moreover, the absence of safety blocks on the reels would have been irrelevant if a levelator had been used.

Since the jury found that the absence of a levelator was the proximate cause of Coleman's injuries, his negligence is no bar to recovery. *See Funk, supra*, and *Tulkku, supra*. Similarly, the district court erred in reducing the jury's award by the percentage the jury found Coleman contributorily negligent. *See Stambaugh, supra; Timmerman, supra;* and *Tulkku, supra* (on remand). Accordingly, we reverse the judgment of the district court.

---

**6.** Western Electric bases its argument that Coleman presented several theories of negligence on the following instruction:

> "Plaintiff claims that Western Electric was negligent in one or more of the following ways: one, negligently failing to provide a means for safely unloading the reels; two, requiring John Coleman to take part in an unsafe loading procedure; three, failure to maintain their premises or more specifically, their levelators in such a condition as to allow safe unloading of the reels; and four, failure to warn Mr. Coleman that safety blocks had not been used on or had been removed from the reel."

**7.** We note that even this superficial ambiguity would not be present if the district court had issued special interrogatories to the jury. Special interrogatories would have resolved conclusively the question of whether Coleman indeed presented several theories of negligence. Moreover, assuming Coleman had presented several theories, then special interrogatories would enable this court to ascertain which theory was the basis for the jury's finding that Western Electric was liable.